UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **KENDRA MAZE** | **CASE NO. 6:19-CV-00953** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **MARK GARBER ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

## MEMORANDUM RULING

The present matter before the Court is a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. 3] filed by Sheriff Mark Garber. This is a Section 1983 action asserting claims for unlawful arrest, abuse of process, and state law claims against Garber and a Lafayette Parish Deputy Sheriff. Garber contends that the plaintiff, Kendra Maze, has failed to plead facts sufficient to state a Section 1983 claim against him in his official or personal capacity. As explained below, the Court **GRANTS** the Motion to Dismiss **IN PART** and **DENIES** the Motion **IN PART**.

### I.
### BACKGROUND

This Section 1983 action arises out of a domestic dispute between Maze and her male partner. [ECF No. 1 at ¶ 9] Maze alleges that she and her partner got into a heated argument at her home in the early morning hours of August 2, 2018. [*Id.*] Maze contends that her partner physically threatened her and then left Maze's house. [*Id.*] Maze bolted the door to her house after her partner left because she feared for her safety. [*Id.*] Maze's partner then called the police. [*Id.*] "Officer Miller" of the Lafayette Parish Sheriff's office responded to the call by Maze's partner.[1] [ECF No.

---

[1] The complaint, as well as the parties' briefing, only identify Miller as "Officer Miller." Plaintiff states in her complaint that Miller's first name is "unknown." [ECF No. 1 at ¶ 4 (2)]

1 at ¶ 10] Maze alleges that she refused Miller's request to open the door to her house because "her male partner being there made her feel unsafe and uncomfortable." [*Id.*] According to Maze, Miller then assisted her partner in forcibly opening the door to her home. [ECF No. 1 at ¶ 11] Maze alleges that Miller allowed her male partner to enter her home and did not remove or separate her from her partner. [*Id.*] She further alleges that Miller allowed her partner to restrain her after he entered the home. [*Id.*] Miller then warned Maze that she was disturbing the peace and could be arrested. [ECF No. 1 at ¶ 13] Maze alleges that "without any just cause [she] was then slammed against the wall by [Miller] and was told she was going to jail for the offense which she never committed." [*Id.*] Maze further alleges that she "tried to resist the actions of [Miller] when she was pushed by [Miller], causing her to fall down a staircase, sustaining serious injuries." [ECF No. 1 at ¶ 14]

Maze then filed the present complaint asserting three counts: (1) a claim under 42 U.S.C. §1983 alleging an unlawful arrest under the Fourth Amendment of the Constitution; (2) a Section 1983 claim asserting abuse of process under the Fourteenth Amendment; and (3) claims under Louisiana Civil Code arts. 2315, 2322, and 2317.1. Maze asserts the unlawful arrest and state law claims against both Garber and Miller. She asserts her abuse of process claim under the Fourteenth Amendment against Miller only. Maze brings her claims against Garber and Miller both in their official and individual capacities. The present Motion to Dismiss addresses only those claims asserted against Garber in his official and individual capacity.

## II.
### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable clam. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In other words, a Rule 12(b)(6) motion "admits the facts alleged

in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Id.* at 161-62. When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and brackets omitted). Moreover, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 555). In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

## III.
### ANALYSIS

### A. Section 1983 Claims.

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (citing 42 U.S.C. § 1983). Section 1983 "is not itself a source of substantive

rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). To state a claim under Section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). Maze asserts a Section 1983 claim against Garber for unlawful arrest under the Fourth Amendment. She brings this claim against Garber in his official and individual capacities.

### 1. Official Capacity Claim

Claims against an official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21 (1991); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005). Here, the entity is Lafayette Parish. Lafayette Parish may not be held liable under Section 1983 on a theory of vicarious liability. *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex.*, ___ U.S. ___, 138 S. Ct. 510 (2017). It may, however, be liable under *Monell v. Dep't of Soc. Servs.*, when allegedly unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978).

To state a Section 1983 *Monell* claim, a plaintiff must allege facts demonstrating that (1) an official policy, (2) promulgated by the municipal policymaker, (3) was the moving force for the violation of a constitutional right. *Blanchard-Daigle v. Geers*, No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020). Official policies may exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so

common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* A plaintiff alleging a practice so common and well-settled as to represent municipal policy must show a pattern of conduct that is specific and similar to the constitutional violation alleged by the plaintiff. *Hicks-Fields*, 860 F.3d at 810. In so doing, a plaintiff "must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

Here, Maze identifies Garber as the parish's chief law enforcement officer and the final policymaker for law enforcement policy in the parish. [ECF No. 1 at ¶ 4] (alleging that Garber is the parish's "chief law-enforcement officer, policymaker and back/or decision-maker regarding law enforcement training, supervision, rules and procedures.") But she does not identify a specific written policy or widespread practice that Garber instituted, much less allege how that policy or widespread practice was the motivating force for the unlawful arrest alleged in the complaint. Other than identifying Garber's policymaking role, the complaint makes only one other general reference to a "policy" in alleging that Miller "was at all pertinent times acting under color of state law in performance of his duties and under color of the statutes, ordinances, regulations, *policies*, customs, and uses of the Lafayette Parish Sheriff." [*Id.*] (emphasis added). With respect to a relevant practice or custom, paragraph 7 of the complaint merely alleges that both Garber and Miller were "personally acting under the color of state law and back/or in compliance with the official rules, regulations, laws, statutes, *customs, usages and/or practices* of the State of Louisiana and/or the Parish of Lafayette." [ECF No. 1 at ¶ 7] (emphasis added). Yet, the complaint does not identify the specific "customs, usages and/or practices" that led to Maze's allegedly unlawful arrest.

Maze need not plead the relevant policy or widespread practice in exhaustive detail. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–46 (S.D. Tex. 2011) (explaining that "only minimal factual allegations should be required at the motion to dismiss stage."). Nor is Maze subject to a heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (holding that *Monell* claims are not subject to a heightened pleading standard). However, the bare requirements of notice pleading under Rule 8 of the Federal Rules of Civil Procedure require that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... *cannot be conclusory; it must contain specific facts*." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir.1997) (citation omitted) (emphasis added). Moreover, in light of *Iqbal* and *Twombley*, Maze must plead sufficient facts "to state a claim for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—that the pleader is entitled to relief.'"). To satisfy this standard, a plaintiff must, at a minimum, identify the relevant policy, custom or practice that was the motivating force for the alleged constitutional violation. *See Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("... we have required a plaintiff seeking to impose liability on a municipality under section 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.")

*Thomas v. City of Galveston, Texas,* a case that Maze cites in her Opposition, provides a useful framework for applying this pleading standard. 800 F. Supp. 2d 826. According to *Thomas*,

a plaintiff is not required to "specifically state what the policy is, as the plaintiff will generally not have access to it." *Id.* at 844. However, the plaintiff must plead more than "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice, failure to adequately train or supervise, and negligent hiring of officials." *Id.* at 845. The plaintiff's allegations must provide *fair notice* to the defendant with respect to the specific policies or customs that are being challenged. *Id.* at 844. For example, "allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Id.* (footnotes omitted) In *Thomas*, the court concluded that the plaintiff's "lengthy" allegations did not satisfy this pleading standard because they "consist[ed] only of a list of number of broadly-defined constitutional violations (for example, 'excessive force' and 'unlawful searches and seizures') followed by the assertion that there was a pattern of such violations, that there was a failure to train, or that the violations resulted from improper hiring." *Id.* at 845.

Here, the bare, formulaic assertion that the defendants acted under " policies, customs, and uses of the Lafayette Parish Sheriff" or "customs, usages and/or practices of the State of Louisiana and/or the Parish of Lafayette" does not give Garber adequate notice as to the basis of Maze's *Monell* claim. [ECF No. 1 at ¶¶ 4, 7] Accordingly the Court GRANTS Garber's Motion to Dismiss with respect to Maze's *Monell* claim. However, as explained below, the Court grants Maze leave to file an amended complaint to address these pleading deficiencies.

2. **Individual Capacity Claim**

Garber next challenges the unlawful arrest claim brought against him in his individual capacity. The individual capacity claim against Garber must be grounded on his personal conduct.

Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 & n. 6 (5th Cir.2002); *see also Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir.1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). Rather, the plaintiff "must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein,* 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir.1992)). Supervisory officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins,* 828 F.2d at 304. To prove a supervisory official is liable under Section 1983 in his individual capacity, a plaintiff must prove that the official (1) affirmatively participated in the acts causing the constitutional deprivation or (2) implemented unconstitutional policies that causally led to the plaintiff's injury. *Hauenstein v. Hilton,* 716 F. App'x 359, 360 (5th Cir. 2018).

Applying these principles to the present case, the complaint alleges no facts showing that Garber was personally involved in the encounter between Miller and Maze that ultimately led to Maze's arrest. Maze's allegations do not show that Garber was present at any time during the events that led to Maze's arrest nor do they detail any other involvement by Garber in the arrest. At most, the complaint alleges that Garber was the chief law enforcement officer for the parish and Miller's ultimate supervisor. These allegations are insufficient to state an individual Section 1983 claim against Garber because they are essentially a claim of vicarious or *respondeat superior* liability. *Scott,* 276 F.3d at 742.

While Maze's complaint does not specifically allege a claim against Garber based on a "failure to train" theory, her Opposition cites inadequate training as a ground for her claim. [ECF No. 5 at 2-3, 5] "To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the training procedures were inadequate, (2) that defendant was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the violations in question." *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017). A plaintiff alleging inadequate training "must allege with specificity how a particular training program is defective." *Id.* at 345. "Deliberate indifference is more than mere negligence." *Conner,* 209 F.3d at 796 (citation omitted). A plaintiff must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390.

Applying these principals to the present case, Maze's complaint includes no facts showing that Garber acted with deliberate indifference with respect to training or that any training policy directly caused Maze's allegedly unlawful arrest. Nor does the complaint even expressly state that Miller's training was inadequate. In fact, the complaint includes only one reference to "training" as part of a generalized description of Garber's role as the Lafayette Parish Sheriff: Garber was "Lafayette Parish's chief law-enforcement officer, policymaker and backs/or decision-maker regarding law enforcement *training, supervision, rules and procedures*." [ECF No. 1 at ¶ 4] (emphasis added). These allegations are insufficient to state an individual claim against Garber under Section 1983. The Court, therefore, GRANTS the Motion to Dismiss with respect to the individual claim asserted against Garber but, as explained below, grants Maze leave to amend her complaint to address these deficiencies.

### 3. Qualified Immunity

Finally, Garber argues that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). When a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*). Qualified immunity is "immunity from suit rather than a mere defense to liability" and should, therefore, be resolved at the earliest possible stage in the litigation. *Id.*; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Because an early resolution of qualified immunity protects officials from unwarranted liability and "costly, time-consuming, and intrusive" pre-trial discovery, it may be decided on a motion to dismiss. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Estate of Munoz by Ruelas v. Ford*, 402 F. Supp. 3d 344, 350 (E.D. Tex. 2019).

Whether an officer is entitled to qualified immunity turns on a two-prong inquiry. First, do the facts alleged or shown by the plaintiff demonstrate the violation of a constitutional right? *Harlow*, 457 U.S. at 818. Second, was that right "clearly established" at the time of the defendant's alleged misconduct? *Id.* "The constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). An officer's conduct that violates the plaintiff's constitutional rights does not preclude the qualified immunity defense if the officer's conduct was objectively reasonable. *Id.* at 467. The "objective reasonableness" standard ensures that officers were on notice that their conduct was unlawful before they are subjected to a lawsuit. *Pearson*, 555 U.S. at 244. Whether

the actions of an officer are objectively reasonable turns on the circumstances confronting the officer as well as "clearly established law" in effect at the time of the officer's conduct. *Id.* at 243. "The subjective intent of the officer is irrelevant, and the officer's knowledge of the law need not rise to the level of a 'constitutional scholar.'" *Sanchez*, 139 F.3d at 467 (citing *Harlow*, 457 U.S. at 815–17). A court's analysis of qualified immunity may start with either step of the inquiry. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

Here, Maze's allegations do not satisfy either prong of the qualified immunity standard. With respect to the first prong, the complaint does not include facts showing that Garber personally violated any constitutional rights in connection with Maze's arrest. Nor does the complaint include facts showing that Garber committed a constitutional violation with respect to training or supervision. Instead, the complaint merely describes Garber's role as Lafayette Parish Sheriff and as the ultimate policymaker and supervisor of the Lafayette Parish Sheriff's Office.

With respect to the second prong of the inquiry – whether the right was clearly established – "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. 635 at 640. Courts generally address the "clearly established" prong by looking at cases with analogous facts. In so doing, courts must not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to *the specific facts of the case*." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (emphasis added); *see also Kinney*, 367 F.3d at 350.

This means that the inquiry here is not whether the general requirement of probable cause for a warrantless arrest is "clearly established." Rather, the inquiry is whether it was clearly established that the Fourth Amendment prohibited Garber's conduct "in the situation he confronted" based on controlling or persuasive authority from other cases. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). "Although a case directly on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Melton v. Phillips*, 875 F.3d 256, 265–66 (5th Cir. 2017) (quoting *Vincent*, 805 F.3d at 547). Based on the sparse allegations of the complaint alone, the Court cannot conclude that Garber violated "clearly established" law based solely on his supervisory role as Lafayette Parish Sheriff.

When a qualified immunity defense is asserted in an answer or motion to dismiss, a court may, after considering the allegations in the complaint, allow a reply under Rule 7(a) of the Federal Rules of Civil Procedure that specifically addresses qualified immunity. *See Brown v. City of Houston*, 297 F. Supp. 3d 748, 771–75 (S.D. Tex. 2017). As explained below, the Court grants Maze leave to file an amended complaint to cure the pleading deficiencies outlined in this ruling. If Maze seeks to challenge qualified immunity, she may incorporate her Rule 7(a) reply addressing qualified immunity into her amended complaint. Garber's motion is DENIED with respect to the issue of qualified immunity, without prejudice to his ability to re-urge qualified immunity if Maze files an amended complaint and Rule 7(a) reply.

**B. Maze's State Law Claims.**

Garber also challenges Maze's state law claims under the La. Civ. Code art. 2317.1 and 2322. Article 2317.1 provides that "the owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of

reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." *See also Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 16 F. Supp. 3d 755, 758 (E.D. La. 2014). Article 2322 provides that the "owner of a building is answerable for the damages occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction." *See also Gary v. Chevron, USA, Inc.*, 940 F.2d 139 (5th Cir. 1991). Garber argues that the complaint includes no facts that would support the elements of a claim under either article 2317.1 or article 2322. In response, Maze does not oppose the dismissal of her claims under articles 2317.1 and 2322. Accordingly, the court GRANTS the Motion to Dismiss with respect to any claims under articles 2317.1 and 2322. These claims are dismissed with prejudice.

### C. **Leave to Amend and Rule 7(a) Reply.**

Maze requests leave to amend her complaint. [Doc. No. 27 at 27] Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." "Courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim." *Reed v. Gautreaux*, No. CV 19-130, 2019 WL 6219780, at *3 (M.D. La. Nov. 21, 2019) (citing *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014)); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000)). One key exception to this generous standard is where the amendment would be futile. *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)." *Id.* In other words, if an amendment would be subject to the same grounds of dismissal

as under a defendant's original Rule 12(b)(6) motion, amendment would be futile, and the court should deny leave to amend.

Here, Maze's complaint has not been previously amended, and no answer has been filed by Garber. Consequently, at this time the Court finds that it would not be futile for Maze to amend her complaint to address the pleading deficiencies noted above. Leave to replead or amend the complaint is therefore GRANTED with respect to the Section 1983 claims asserted against Garber in his official and individual capacity. Any Amended Complaint shall be filed no later than thirty (30) days from the date of this ruling. Also, to the extent that Maze seeks to challenge Garber's assertion of qualified immunity with facts in addition to the factual allegations of the complaint, she must include a Rule 7(a) reply in the amended complaint. The Court denies leave to re-plead any other claim on the grounds that amendment would be futile.

## IV.
### CONCLUSION

For the reasons set forth above, Garber's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 3] is **GRANTED IN PART** and **DENIED IN PART.**

Garber's motion is **GRANTED** as to the Section 1983 claims asserted against Garber in his official and individual capacity. Leave to replead these claims is **GRANTED**, and an amended complaint shall be filed no later than thirty (30) days from the date of this ruling.

Garber's motion is **GRANTED** with respect to any claims under La. Civ. Code art. 2317.1 and 2322. These claims are **DISMISSED WITH PREJUDICE**.

Garber's motion is **DENIED** as to qualified immunity. Any Rule 7(a) reply addressing qualified immunity shall be incorporated into an amended complaint addressing the pleading deficiencies noted above.

THUS DONE in Chambers on this 1st day of June, 2020.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE